You may proceed. Good morning. May it please the Court, my name is Stuart Felinski and I represent the petitioner Lily Marlene Constanza. And I would like to reserve two minutes for rebuttal, please. Okay, please write your clock. Okay, thank you. You know, as the Court is aware, there are basically two prongs in this case. There is, you know, setting aside the in absentia order and equitable tolling, and the other one is changed circumstances in Guatemala. The equitable tolling argument looks like a tough one. What we would submit, Your Honor, that she was without an attorney. Yes. And, you know, the government's lawyer, page 101 of the transcript, or probably of the record, you know, does state, you know, that the cause of her coming forward was that she was apprehended in the fugitive program. Well, the problem with it, I mean, for me, the problem with the equitable tolling argument is, sure, it looks like the government erred in, or the board erred in requiring her to pay a fee for the first motion to reopen. Correct. But then she basically waited 12 years to file the current motion, right? Your Honor, she also, the record shows that in 1998, she went to the former INS and made inquire and saying, I didn't show up for my interview, not hearing, interview. You know, what is happening? And apparently, you know, the notation said, oh, you were ordered removed. What further happened, we don't know. She doesn't recall. So in your view, that constitutes due diligence on her part in seeking to protect her procedural rights there? On my part, no. But then I'm a lawyer practicing immigration law for a long time. So your other argument, though, seems to have a little bit more heft to it. Okay. Towards that end, I will take note of the government's brief footnote 27, where they say, if, you know, the issue of a particular social group and changed circumstances is properly before this court, then the case must be remanded. We happen to be in agreement on that one. And I would note that the government doesn't address our argument that there has been a big change in Guatemala. So help me size up the evidence that supports your statement that there's been changed circumstances since the filing of, I guess, when she was first apprehended or since 1996 or whenever it was. Actually, she was first apprehended. Actually, she wasn't apprehended. Oh, when she first entered the city. She first entered the country, and within four months, if memory serves me correct, she affirmatively sought asylum. That was in 96? No, 94. 94, sorry. And at that time, the one-year rule was not in place. You know, she could have waited. From 94 until the time she filed her motion to reopen, what were the? Well, the big change in circumstance is that the Civil War ended. Before the peace agreement, there was just generalized violence. Everybody was getting killed, not just women. And so assuming that, you know, there was violence against women before 96, well, that was but one reason. Now, the changed circumstances now with the peace agreement and the rate of violence against women did not drop. Has it increased? I believe so. So I think what Judge Paez wants to know is what's the evidence in the record that there's been additional persecution against this particular social group to which she belongs? Well, we put in all the generalized evidence, and we argued that she is in the group of women subject to femicide, which this court indicated in Perdomo, and I believe Judge Paez, you wrote that, you know, would be a cognitive social group. Could be. Could be. Of course, could be. We didn't say it was. Never said that. We sent it back to the BIA for them to take a look. And since then, the only BIA case that I'm aware of on that subject is in August of this year, ARCG. Right. There are two. And in ARCG, yes, we don't have the circumstance of, you know, domestic violence. But ARCG does not have language limiting it to that situation. So, yes, it can be distinguished on the facts. It's tasteful to talk about this because we're talking about innocent people being murdered. But it seemed to me that the evidence is mixed as to whether or not there's increased violence now directed towards women. Isn't there, you know, articles on different sides and trying to sort out this mess? And you had a situation where many people, including many women, were killed in the Civil War. Now, many women are being killed as a result of some type of terribly vicious misogyny, at least some articles recognized in Guatemala. But is that enhancement really sufficient? Is the record clear enough that we could find that the lower authorities made a mistake? We're required to correct. Well, I could say that the BIA did not have the advantage of Paradomo. And they do say, although we're saying there was no changed circumstance, even if we said there was, she still wouldn't qualify. And they do not expand on that. And I would say that they should be allowed that. Your client's been in this country for 20 years. Correct. Is there any criminal record? No. Have you sought to mediate this case with the board or to otherwise work something out under the Morton memo? We did approach ICE and talk about what we call PD, prosecutorial discretion. And apparently the local policy is not to do it if there is a petition for review pending before this court. We would love to do it. So wouldn't you have to get together and agree to jointly seek administrative closure of the case? That is correct, Your Honor. And again, the experience in our office is that the Los Angeles District of ICE declines to do that when there is a pending petition for review. Well, but we see cases where, out of L.A., where there are petitions for review, where we send them to mediation, the local ICE office is involved. I don't know if they're involved at this level when we get to this level. But they certainly work out arrangements. Your Honor, I will also represent to the court that we have experience where this court has ordered it to mediation. And the request comes through, you know, the Office of Immigration Litigation. Right. It seems that the local ICE is more amenable to that. I would like to reserve it, Your Honor. And we'll talk to counsel for the government. Good morning. May it please the Court? My name is Monica Anton, appearing on behalf of the Attorney General. I'll start in reverse. Can I just ask you, you're a DOJ attorney, you're not an oil attorney? Oil is within DOJ. So you are an oil attorney. I am, yes. Okay. So beginning with the Court's discussion of PD, the case was in mediation. There is currently a request for PD pending with ICE L.A., and if I may clarify what the policy is when there is a petition for review pending? It's prosecutorial discretion? Yes. Okay. So the policy when there's a petition for review pending, of course, as the Court knows, is that, yes, we will engage in discussions with ICE about PD, and we are, in fact, in the middle of such discussion, regardless of the mediation that has already happened. In this case, we sent this case to our local, to the Ninth Circuit Mediation Office? It was in mediation, yes, for a few months. This summer, in fact, recently. It was released in July. When the petition for review seeks review of the denial of a motion to reopen, rather than administrative closure, ICE will agree to some form of post-removal order action. So it'll typically take the form of deferred action or an administrative stay of removal, rather than vacating the underlying order. So I do have that request pending. It will probably be a few months before I get an answer from ICE, so I can't guarantee anything right now. So what should we do? Should we defer submission of this case and wait to see? Should we just send you back into the mediation, the Ninth Circuit Mediation file, so you can see if it gets worked out that way? I don't have an opposition going back into mediation, if the panel would prefer that. I can't guarantee you any results, and I can't guarantee that you won't see the case again. Nobody can guarantee any results. Sure, so it may be necessary for you to rule on the legal issues later. Turning to that, one concern I had about the BIA's opinion concerning the particular social group was that it was decided before our latest decision in Hernandez-Rivas, and the BIA applied incorrect law in determining a particular social group. Well, the Board didn't reach the issue of whether the group is a particular social group in this case. They rested on the preliminary determination of whether country conditions have changed. So in the absence of meeting that threshold determination of whether country conditions have changed, it's not necessary for the Board to reach the merits of the prima facie eligibility for asylum claim. Go ahead. But there's at least some evidence on the record, some fairly significant evidence on the record, that women are being targeted now as a result of what I a minute ago called sort of a vicious misogyny. They don't like women moving into certain types of middle-level positions and that sort of thing. There is evidence that that's going on in Guatemala right now, isn't there? There is, but as you said, it's mixed, and it's similar to what was happening during the armed conflict. It's qualitatively different, though. I mean, you had armed forces at that time. There's some – I mean, it was part of the civil – or the conflict that was ongoing for a number of years. That's true. And everybody was at risk. Yes, but – Both sides. Yes. The commentators have said that many of the people who are responsible for what you've described as misogynistic violence are the same people who are perpetrating the violence in the same ways, using the same methods as they were during the armed conflict. So regardless of the change in the war and the end of the armed conflict, it's the same people who are – those people who were guerrillas during the armed conflict, they're still living there. So you're saying that there's an irony here that if 25,000 women a year are being murdered as a result of a civil war, and then 10 years later 25,000 women are being murdered a year because they're women, not because of a civil war, there hasn't really been a change in circumstances. They're just killing women en masse, and that's not a change in circumstances that we should respond to. Well, no, it's not a change in circumstances. It seems qualitatively different, which is one of the factors we look at. Yes, but the commentators have agreed that it's really not qualitatively different. There is evidence in the record to say that it's not, that it's the same people. The violence is the same. The methods that they – Is that one of the articles that the government – one of the documents that the government submitted that takes that position, or is it part of – No, it's from the petitioner's own evidence. Cancel. I don't – so it used to be everybody's getting killed, and now only women are being killed. You don't think that's persecution on account of gender? Well, it's not only women who are still being killed. Women are a fraction of the people who are being killed. Let me – I want to go back to my particular social group question because I wasn't clear. What the BIA says is that it won't consider whether she's in a particular social group because she raised that for the first time on appeal. But the IJ opinion actually says that she claimed that she would face – this is ER-97 – that she claimed she would face persecution on account of her membership in the social group while only women subject to or at risk of femicide. And then it's the IJ who applies the incorrect law in light of Hernandez-Rivas. So I think – okay, I think the IJ is wrong because it applied incorrect law, and I think that the IA is wrong because it said she raised the argument for the first time on appeal, and she clearly raised it before the IJ. So what do we do? You know what I'm referring to, right? It's in black and white on the page. Well, what the BIA is saying is that she's raising a new social group on appeal, that her social group has changed, her description of it has changed. So – but ultimately what the board is saying is that it's not going to reach the question of whether either social group is a social group because it's going to rest its determination on whether conditions in Guatemala have changed. So until we get past the – Wouldn't it sort of depend on how you define the social group, though? Whether conditions have changed? Well, both social groups – What comes first, so to speak? It's true that the conditions have to have changed so as to create a prima facie eligibility for asylum, so it's not a completely isolated question. But both social groups are at heart about violence against women in Guatemala. So the broader view of what conditions are for women in Guatemala underlies both of the social groups. So either way, the board was permitted to rule on the motion triumphant solely on whether conditions in Guatemala have changed. And until we get past that, it's not necessary to rule on the social group itself. And, of course, if the court finds that conditions have changed, that the board did abuse its discretion. Well, maybe if the two concepts are linked, then maybe the board should take another look. Well – In light of PRODOMA. And in light of their recent activity in these other cases of some. Because what they seem to have done is to narrow the group to women who have been subjected to domestic violence. Well, the group is defined by the applicant. So the board is responding to the group. Yes. But if she was – when did she first raise the social group question? That comes up in the motion triumphant filed in 2008, I believe. So – There's been a significant change in the whole social group area. There has. Both on our part and on the part of the BIA. I agree. Yes. It seems to be an evolving concept. Yes. Is there concern that if the court reverses the decision, that any woman from Guatemala will be permitted to stay in the United States? Well, I don't think that there's a generalized concern about that. It always comes down to – it's so specific to the social group put forth by the applicant, to the evidence presented by the applicant. We have to see this whole sociological, psychological environment in which to find the social group. So every social group claim I've seen is so different, even though they are based on these very broad sweeping generalizations of violence against women in certain countries. So I don't think that there's a concern about an overgeneralization to that extent. Well, I see that my time is running down. So just confirm. The government would not be opposed if we did send this over back to our mediation unit in light of the fact that your request is pending. I'm fine with going back into mediation if petitioners agree to that, if Petitioner's Council agrees to that. I just can't. Okay. That's fine. I just can't guarantee anything. Sure. Nothing in life is certain. Well, if the court has no further questions, the government rests on the pleading. Thank you. Thank you. Thank you for being so genuine. I appreciate it. Yes. It's very unpleasant. I agree with you that it's distasteful. I know. The facts are unpleasant, but the genuineness is appreciated. Yes. All agreed. I'll be very short. We're amenable to being referred to mediation. All right. Thank you. Thank you. Constanza Beholder, we've previously submitted Shaw these grants.
judges: Ponsor, Wardlaw, Paez